UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHWIN GOPINATH,<br><br>                            Plaintiff,<br><br>v.<br><br>SOMALOGIC, INC., a Delaware corporation; and DOES 1 through 20, inclusive,<br><br>                            Defendants. | Case No.:  23-cv-1164-W-WVG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART SOMALOGIC, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND STRIKE PRAYER FOR EXEMPLARY AND PUNITIVE DAMAGES [DOC. 7]** |

Pending before the Court is Defendant SomaLogic, Inc.'s Motion To Dismiss Plaintiff's Complaint and Strike Prayer for Exemplary and Punitive Damages (the "Motion") [Doc. 7].

The Court decides the matter on the papers submitted and without oral argument. *See* Civ. R. 7.1(d)(1).  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** SomaLogic's Motion [Doc. 7].

## I.    FACTUAL BACKGROUND

Plaintiff Dr. Gopinath, cofounded Palamedrix, Inc. ("Palamedrix") and served as Chief Technology Officer for the company. (*Compl.* [Doc. 12] ¶¶ 17, 19.) In 2021, the Defendant in this case, SomaLogic, Inc. ("SomaLogic"), approached Palamedrix to discuss a potential merger. (*Id.* ¶¶ 18, 22.) After about one year of negotiations, SomaLogic and Palamedrix entered into a merger agreement on July 25, 2022 ("Merger Agreement"). (*Id.* ¶ 25.)

Under the Merger Agreement, SomaLogic agreed to pay $35 million upon closing of the merger, comprising $14 million cash ("Upfront Cash Consideration") and $21 million in SomaLogic common stock ("Upfront Stock Consideration"). (*Id.* ¶ 26.) The Upfront Stock Consideration was divided between Dr. Gopinath and Palamedrix's other Founders. (*Id.*) SomaLogic also agreed to pay up to an additional $17.5 million in "Milestone Consideration" to the Founders if SomaLogic achieved certain revenue-based milestones by 2027 and 2028. (*Id.* ¶ 33.) Under the Merger Agreement, a Founder is not eligible to receive this additional consideration unless the Founder "remains a full-time employee" with SomaLogic when the milestones are achieved. (*Id.* ¶ 34.)

In connection with the Merger Agreement, SomaLogic provided Dr. Gopinath with a Founder Side Letter Agreement, dated July 25, 2022 ("Founder Side Letter"). (*Id.* ¶ 27.) Under the Founder Side Letter, Dr. Gopinath's Upfront Stock Consideration was "fully vested 'subject to the risk of forfeiture[.]'" (*Id.* ¶¶ 27–29.) The Founder Side Letter provides that Dr. Gopinath would automatically forfeit certain percentages of the Upfront Stock Consideration if he left SomaLogic before the 12- month, 24-month, or 36-month anniversaries of the merger's closing. (*Id.* ¶ 28.) But if Dr. Gopinath resigned for "Good Reason" (or was terminated without "Cause"), then his Upfront Stock Consideration would "no longer be subject to forfeiture." (*Id.* ¶ 29.) The Merger Agreement defines "Good Reason" to include "a material, adverse change in [a] Founder's title, authority, duties or responsibilities." (*Id.* ¶ 30.)

SomaLogic's merger with Palamedrix successfully closed on August 31, 2022. (*Id.* ¶ 25.) After the merger, Dr. Gopinath joined SomaLogic as Senior Director, Assay Development and reported to Dr. Shane Bowen. (*Id.* ¶ 35.) As required by the parties' agreements, SomaLogic paid Dr. Gopinath his portion of the Upfront Stock Consideration upon closing, comprising millions of dollars in compensation. (*Id.* ¶¶ 26, 32.)

Issues between Dr. Gopinath and SomaLogic quickly piled up. Dr. Gopinath alleges that "SomaLogic [] prevented former Palamedrix employees from continuing their research and development" and "ma[de] it unnecessarily difficult for former Palamedrix employees to buy even the most basic supplies for research." (*Id.* ¶ 43.) He further alleges that SomaLogic's Vice President of Technology Development, Shane Bowen, "harasses, demeans, and discriminates against SomaLogic's female employees." (*Id.* ¶ 45.) In an interview with SomaLogic's Senior Vice President of People & Culture, Alison Roelke, Dr. Gopinath "confirmed that Mr. Bowen engaged in inappropriate behavior." (*Id.* ¶ 46.)

According to Dr. Gopinath, "SomaLogic's bungling of the Palamedrix acquisition, its mismanagement of former Palamedrix employees, and its promotion of Mr. Bowen led most of Dr. Gopinath's team from Palamedrix to quit." (*Id.* ¶ 51.) This included four of Dr. Gopinath's six reports. (*Id.* ¶ 6.) Dr. Gopinath alleges that the "loss of former Palamedrix employees substantially impaired Dr. Gopinath's ability to execute his duties and responsibilities and achieve the Milestones." (*Id.* ¶ 54.) Furthermore, "SomaLogic impeded Dr. Gopinath's attempts to replace these former Palamedrix employees" and "did not provide Dr. Gopinath with the budget to hire a complete and qualified team needed to achieve the Milestones." (*Id.* ¶ 55–56.)

Less than three months after the merger closed, in November 2022, Dr. Gopinath "notified SomaLogic that he had Good Reason to resign." (*Id.* ¶ 58.) "In response, Dr. Gopinath was banned from SomaLogic's offices." (*Id.* ¶ 59.) A few months later, Dr. Gopinath emailed SomaLogic's Board of Directors to report that he had "faced

problematic behavior from [his] chain of command and HR[.]" (*Id.* ¶ 68.) Dr. Gopinath "reported Mr. Bowen's unethical and unlawful conduct to SomaLogic's Board of Directors" and expressed his concern that "there is a systemic problem with the Somalogic culture and leadership." (*Id.* ¶¶ 67, 71.) According to Dr. Gopinath, when he tried to address these issues with SomaLogic leadership he "was immediately asked to work remotely, given vague tasks with unclear instructions, and asked to create an IP paper trail that could create issues for Somalogic, for which [he] would likely be blamed later." (*Id.* ¶ 70.)

In response to Dr. SomaLogic's email, "SomaLogic revoked Dr. Gopinath's access to SomaLogic's systems and his SomaLogic email account." (*Id.* ¶ 73.) About a month later, Dr. Gopinath "resigned" from his position at SomaLogic when he emailed notice of "his resignation" to several SomaLogic executives. (*Id.* ¶ 75.) In that email, Dr. Gopinath stated that his resignation was "effective immediately." (*Id.*) Later that day, SomaLogic sent him a "termination letter" that "purport[ed]" to "terminate[]" his employment with SomaLogic "effective immediately." (*Id.* ¶ 77.)

## II. PROCEDURAL HISTORY

SomaLogic brought this motion on June 29, 2023. SomaLogic's first argument in the Motion was that the Complaint should be dismissed under the *forum non conveniens* doctrine based on the Forum Selection Clause in the Employment Agreement between the Parties. (*Mot.* at 6.) On July 27, 2023, while this motion was pending, SomaLogic informed Dr. Gopinath that it was "withdrawing its *forum non conveniens* argument." (*See Decl. of R. Taylor* [Doc. 13-1] at 1.) In its Reply, SomaLogic withdrew the *forum non conveniens* argument reflected in Section III.A of the Motion. (*Reply* [Doc. 15] at 2, n. 1.) SomaLogic's other arguments as to its motion to dismiss and motion to strike remain.

4

### III. MOTION TO DISMISS

#### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F. 2d 578, 581 (9th Cir. 1983). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Balisteri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cnty.*, 487 F. 3d 1246, 1249 (9th Cir. 2007).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).

#### B. Analysis

##### 1. Declaratory Judgement

Dr. Gopinath's declaratory judgement cause of action "seeks a declaration that he resigned" from SomaLogic "for 'Good Reason,' as defined in the Merger Agreement." (*Id.* ¶ 80.) Dr. Gopinath alleges that "Good Reason" existed for his purported resignation because "[t]here was a material, adverse change in [Plaintiff's] title, authority, duties, and

responsibilities." (*Id.* ¶ 82.) SomaLogic argues that this cause of action should be dismissed for two reasons. (*Mot.* at 10–11.)

    First, SomaLogic argues that "the Complaint contains no allegations showing how or when any supposed changes in Plaintiffs' [sic] title, authority, duties, or responsibilities occurred." (*Mot.* at 11.) The Court disagrees. The Complaint contains a substantial number of allegations alleging how Dr. Gopinath's duties and responsibilities changed. Specifically, Dr. Gopinath alleges that after four of his six direct reports quit, "SomaLogic impeded Dr. Gopinath's attempts to replace these former Palamedrix employees" and "did not provide Dr. Gopinath with the budget to hire a complete and qualified team needed to achieve the Milestones." (*Compl.* ¶ 55–56.) He alleges that the "loss of former Palamedrix employees substantially impaired [his] ability to execute his duties and responsibilities" and "limited" his ability to continue his "research and development." (*Id.* ¶ 54, 6.) Finally, he alleges that he "was banned from SomaLogic's offices" (*id.* ¶ 59.) and asked to work remotely, given vague tasks with unclear instructions, and asked to create an IP paper trail that could create issues for Somalogic, for which [he] would likely be blamed later." (*Id.* ¶ 70.) Taking them together and accepting them as true, these allegations plausibly allege that there were changes to Dr. Gopinath's authority, duties, or responsibilities.

    Second, SomaLogic contends that even if there were changes, the Complaint does not allege that they were "material and adverse enough to satisfy the Merger Agreement's 'Good Reason' standard." (*Mot.* at 11.) As explained above, Dr. Gopinath makes several allegations that, accepted as true, constitute an adverse change in his authority, duties, and responsibilities. And Dr. Gopinath alleges that these changes were "material." (*Compl.* ¶ 82.) Whether any of these alleged changes were, in fact, "material" is a question of fact that cannot be decided at the motion to dismiss stage. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020); *Chapman v. Skype Inc.*, 220 Cal.App.4th 217 (2013)).

For the reasons stated above, SomaLogic's motion to dismiss Dr. Gopinath's claim for declaratory judgement is **DENIED**.

### 2. Wrongful Discharge

Wrongful termination in violation of public policy is a California common-law tort. *Tameny v. Atlantic Richfield Co.*, 610 P.2d 1330 (Cal. 1980). This tort is "limited to those claims finding support in an important policy based on a statutory or constitutional provision." *Green v. Ralee Eng'g Co.*, 960 P.2d 1046, 1054 (Cal. 1998). To prove wrongful termination in violation of public policy, a plaintiff must show: "(1) the plaintiff was employed by the defendant, (2) the defendant discharged the plaintiff, (3) a violation of public policy was a motivating reason for the discharge, and (4) the discharge harmed the plaintiff." *Ferrick v. Santa Clara Univ.*, 181 Cal. Rptr. 3d 68, 75–76 (Cal. Ct. App. 2014).

### a) *Discharge*

SomaLogic first argues that Dr. Gopinath fails to state a claim for wrongful discharge because the Complaint does not allege that Dr. Gopinath was discharged. (*Mot.* at 12-14.) The Complaint alleges that SomaLogic sent him a "termination letter" which stated that his "employment with SomaLogic has been terminated effective immediately." (*Compl.* ¶ 77.) Though it is true that Dr. Gopinath alleges he "resigned" before he received this letter (*Compl.* ¶¶74–77), this allegation does not warrant dismissal of the wrongful discharge cause of action at this stage. To succeed on this claim, Dr. Gopinath will need to prove that he was, in fact, discharged. If Dr. Gopinath was discharged, that finding would necessarily preclude a successful showing under his declaratory action cause of action. And vice versa (as SomaLogic points out): Dr. Gopinath's wrongful termination cause of action will fail if he proves that he did, in fact, resign. This inconsistency is permitted under the Federal Rules of Civil Procedure, which allow pleading in the alternative. FED. R. CIV. P. 8(d)(2)–(3); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012). At this stage, the Court accepts as true the

allegation that SomaLogic "terminated" Dr. Gopinath; this allegation satisfies the second element of California's wrongful discharge tort.

### b) *Public Policy*

Wrongful discharge in violation of public policy requires a plaintiff to demonstrate that the defendant discharged the plaintiff contrary to public policy. *See Stevenson v. Superior Ct.*, 16 Cal. 4th 880, 890 (1997). Wrongful discharge torts typically fall into one of four categories; the last of which being "the employee … (4) reported a statutory violation for the public's benefit." *Green v. Ralee Engineering Co.*, 19 Cal. 4th 66, 76 (1998). SomaLogic also argues that Dr. Gopinath's claim for wrongful discharge in violation of public policy should be dismissed because the Complaint does not identify a specific public policy that was allegedly violated when Dr. Gopinath's employment with SomaLogic ended. (*Mot*. at 14.)

Here, the Complaint sufficiently alleges that Dr. Gopinath's discharge was contrary to public policy. The Complaint alleges that, on March 13, 2023, Dr. Gopinath "reported Mr. Bowen's unethical and unlawful conduct to [Defendant's] Board of Directors" and listed "key issues," including a significant portion of former Palamedrix employees quitting due to "gender-biased actions." (*Compl*. ¶ 67, 70). The same day Dr. Gopinath raised his concerns to the board, his access to SomaLogic's systems and email account were revoked. (*Compl*. ¶ 73). On April 10th, 2023, Dr. Gopinath's employment was terminated. (*Compl*. ¶ 77). Wrongful discharge based on reporting gender discrimination clearly falls under public policy in California as there are California statutes addressing the issue. California Government Code section 12920 states the California public policy against gender discrimination. Cal. Gov't Code §12920. California Government Code section 12940 prohibits the discharging of an employee who "opposed" an employer's gender discrimination. Cal. Gov't Code §12940(h). Dr. Gopinath's allegations sufficiently put the SomaLogic on notice of the public policy at issue.

     SomaLogic cites a California state case, *Tyco Industries Inc. v. Superior Court*, to argue that "general 'allegation[s] of public policy violation[s] of a statute do not suffice to state a cause of action.'" (*Mot.* at 14 (citing 164 Cal. App. 3d 148, 159 (1985).)  While this may be true at the state level, the SomaLogic presents no evidence that the Federal pleading standards require this level of specificity.  Federal courts are governed by the pleading standards of Federal Rules of Civil Procedure Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "Notice pleading requires the plaintiff to set forth in his complaint *claims for relief*, not causes of action, statutes, or legal theories." *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) (emphasis in original).  The Court is not aware of any authority that requires a complaint to name a specific statute or provision that the defendant allegedly violated to survive a motion to dismiss.  SomaLogic is sufficiently on notice of the public policy allegedly violated—the discharging of an employee due to the employee's reporting of gender discrimination.  Under the federal pleading standards, Dr. Gopinath is not required to state specific authority at this stage.

     For the reasons stated above, SomaLogic's motion to dismiss the wrongful discharge in violation of public policy claim is **DENIED**.

### 3.    The "Doe" Defendants

     SomaLogic argues that Dr. Gopinath's claims against the "Doe" defendants should be dismissed because bringing claims against "Doe" defendants is not allowed in the Ninth Circuit. (*Mot.* at 15.)  Dr. Gopinath does not address this argument in his opposition and has therefore conceded this point and abandoned the claims. *See Qureshi v. Countrywide Home Loans, Inc.*, No. 09–4198, 2010 WL 841669, at *6 n. 2 (N.D.Cal. Mar. 10, 2010); *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 586 F.Supp.2d 1109, 1131 (N.D.Cal.2008).  Dr. Gopinath's claims against the "Doe" defendants are **DISMISSED WITHOUT LEAVE TO AMEND.**

### IV. MOTION TO STRIKE

SomaLogic moves to strike Dr. Gopinath's prayer for exemplary and punitive damages under Rule 12 of the Federal Rules of Civil Procedure. Rule 12(f) authorizes a court to "strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). SomaLogic's Motion does not identify which of these categories Dr. Gopinath's prayer falls into, but the Reply states that the prayer is "immaterial" and "impertinent." (*Reply* at 9.) In this Circuit, matter is "immaterial" when it has "no essential or important relationship to the claim for relief or the defenses being pled." *Fantasy v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). And matter is "impertinent" when it does not "pertain [] to the issues in question." *Id.*

Based on these definitions and the Court's holding in *Whittlestone*, Dr. Gopinath's prayer for exemplary and punitive damages does not fall into either category. In *Whittlestone*, the plaintiff's claim for lost profits and consequential damages was not "immaterial" because whether these damages were recoverable "relate[d] directly to the plaintiff's underlying claim for relief." *Whittlestone*, 618 F.3d at 974. And the plaintiff's claim for damages was not "impertinent" because whether the damages were recoverable "pertain[ed] directly to the harm being alleged." *Id.* Here, too, Dr. Gopinath's request for exemplary and punitive damages "relates directly" to his underlying claims for relief of wrongful discharge and declaratory relief based on his departure from SomaLogic. And the requested damages "pertain[] directly" to the harm Dr. Gopinath alleges surrounding his departure from the company.

SomaLogic argues that Dr. Gopinath's prayer for punitive and exemplary damages does not "directly relate" to the underlying substantive claim like *Whittlestone's* claim for compensatory damages did. (*Reply* at 7.) Though the Court agrees that the relationship between the requested damages and the underlying claim/harm was stronger in *Whittlestone* than in this case, it does not read *Whittlestone* as requiring that any damage

request *less related* than in *Whittlestone* is immaterial or impertinent. Indeed, to be "immaterial" the matter must have "*no* [] important relationship to the claim for relief." *Fogerty*, 984 F.2d at 1527 (emphasis added); *see Whittlestone*, 618 F.3d at 974. Here, there is an "important relationship" between Dr. Gopinath's request and the claim for relief: Dr. Gopinath is asking for punitive damages because of alleged conduct by SomaLogic surrounding his departure from the company. Similarly, under the standard applied in *Whittlestone*, Dr. Gopinath's request for exemplary and punitive damages does "pertain" to issues in this case, namely Somalogic's actions prior to and leading up to Dr. Gopinath's departure. *See Fogerty*, 984 F.2d at 1527.

In short, the Court follows *Whittlestone's* holding that Rule 12(f) "does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *Whittlestone*, 618 F.3d at 974-75. Though the precise basis for preclusion in Whittlestone (barred by contract) differs from the basis here (insufficient allegations), that difference does not persuade the Court to depart from *Whittlestone*.

SomaLogic alternatively argues that the Court should construe SomaLogic's motion to strike as a motion to dismiss under Rule 12(b)(6) and dismiss the prayer for relief for failure to state a claim. (*Reply* at 7, n. 9.) There is much disagreement in the Ninth Circuit as to whether a motion to dismiss under Rule 12(b)(6) is a proper mechanism to challenge a request for punitive damages. In *Whittlestone*, the Ninth Circuit held that a Rule 12(f) motion to strike is not a proper procedural mechanism to attack a punitive damages prayer on the grounds that it is precluded as a matter of law. 618 F.3d at 974–75. The Court explained that these arguments were "better suited for a Rule 12(b)(6) motion or a Rule 56 motion, not a Rule 12(f) motion." *Id.* at 974.

Since *Whittlestone*, conflict has been the law of the Ninth Circuit. Some district courts have read *Whittlestone* broadly, concluding that a Rule 12(b)(6) motion to dismiss is the "proper vehicle for challenging the sufficiency of a punitive damages claim." *Oushana v. Lowe's Cos., Inc.*, No. 1:16–cv–01782–AWI–SAB, 2017 WL 5070271, at *2

(E.D. Cal. Nov. 3, 2017).  Others, including this Court, have read *Whittlestone* narrowly, concluding that the holding "authoriz[es] a motion to dismiss a damage prayer *only* where [a] defendant contends the damages are precluded as a matter of law." *Sturm v. Rasmussen*, No.: 18-CV-01689-W-BLM, 2019 WL 626167, at *3 (S.D. Cal. Feb. 14, 2019) (emphasis added); *see also Houston Casualty Co. v. Crum & Forster Insurance Co.*, 2016 WL 4494444, *3–4 (E.D. Cal. Aug. 25, 2016).  And still others, irrespective of whether the defendant challenges punitive damages as a matter of law or sufficiency of the pleadings, have rejected any challenge to punitive damages on a Rule 12(b)(6) motion because it is a remedy and not a claim.  *See Oppenheimer v. Sw. Airlines Co.*, 2013 WL 3149483, *4 (S.D. Cal. 2013) ("Because punitive damages are but a remedy, and thus neither constitutes a claim nor pertains to whether any claim has been stated, requests for punitive damages provide no basis for dismissal under Fed. R. Civ. P. 12(b)(6)."); *Elias v. Navasartian*, No. 1:15-CV-01567-LJO-GSA-PC, 2017 WL 1013122, at *4 (E.D. Cal. Feb. 17, 2017); *Segura v. City of La Mesa*, No. 21CV565-JM-MDD, 2022 WL 17905529, at *11 (S.D. Cal. Dec. 23, 2022).

   The Court is sympathetic to the latter cases' interpretation of Rule 12(b)(6) (which by its text authorizes dismissal *only* for failure to state a "claim" and a request for damages is not a "claim") but is bound by *Whittlestone's* holding that endorsed a Rule 12(b)(6) motion as an appropriate means to challenge a damages request.  The damages request in *Whittlestone* arguably pertained more to a "claim" than the prayer for relief in this case—both because the request was located in the body of the complaint and because it was directly tied a specific cause of action—but the reasoning of the case does not suggest that difference would have changed the decision.  According to the Ninth Circuit, a Rule 12(b)(6) motion is the means by which a party can "dismiss some or all of a pleading[]." *Whittlestone*, 618 F.3d at 974.  A request for punitive damages, even in a prayer for relief, is inarguably "some" of a pleading.  Were the Court to reject this interpretation of *Whittlestone* defendants would be left with no mechanism to challenge a damage request like the one here since *Whittlestone* held that Rule 12(f) cannot be used

for this purpose. This practical consideration further supports this extension of *Whittlestone*. Based on this reading of *Whittlestone*, the Court will consider SomaLogic's Rule 12(b)(6) motion to dismiss the prayer for exemplary and punitive damages.

Under California law, punitive damages are available in connection with negligence claims "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code. § 3294. In federal court, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Thus, even unsupported and/or conclusory averments of malice or intent are sufficient to support a request for punitive damages in federal court. *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273 (N.D. Cal. 2015); *Clark v. Allstate Ins. Co.*, 106 F.Supp.2d 1016, 1018 (S.D. Cal. 2000).

Here, Dr. Gopinath's allegations do not meet Rule 9's low pleading threshold. Dr. Gopinath does not allege or argue that SomaLogic acted with fraud (*see Opp.* at 10-11.), leaving oppression and malice as the only bases supporting punitive damages. As to malice, the Complaint contains no allegations, general or specific, that SomaLogic intended to cause harm to Dr. Gopinath or willfully disregarded his rights. The Complaint describes a complex workplace dispute involving numerous sensitive issues, but the allegations do not plausibly allege that SomaLogic undertook any actions with malicious intent. Additionally, as to oppression, the allegations do not demonstrate "despicable" conduct or "conscious disregard" of Dr. Gopinath's rights. Cal. Civ. Code § 3294(c)(2).

For the reasons stated above, the Court construes SomaLogic's motion to strike as a Rule 12(b)(6) and **GRANTS** the motion, **WITH LEAVE TO AMEND**.

//
/
/
/

## V. CONCLUSION & ORDER

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** SomaLogic's Motion [Doc. 7].

**IT IS SO ORDERED.**

Dated: August 21, 2023

Hon. Thomas J. Whelan
United States District Judge