1
2
3
4
5
6
7
8
9

10          **UNITED STATES DISTRICT COURT**

11          **SOUTHERN DISTRICT OF CALIFORNIA**

12

13   ASHWIN GOPINATH,              Case No.:  3:23-cv-01164-W-WVG
     an individual,
14                                 **ORDER GRANTING IN PART AND**
                          Plaintiff, **DENYING IN PART MOTION TO**
15                                 **DISMISS [Doc. 19]**
16   v.

17   SOMALOGIC, INC.,
     a Delaware,
18
                         Defendant.
19   _____
     SOMALOGIC, INC.,
20   a Delaware corporation,

21                      Counterclaimant,

22   v.

23   ASHWIN GOPINATH,
     an individual,
24
                   Counter-Defendant.
25

26

27          Pending before the Court is Dr. Ashwin Gopinath's ("Counter-Defendant") motion

28   to dismiss ([Doc. 19], "Motion") all four of Somalogic, Inc.'s ("Counterclaimant")

                                         1

counterclaims ([Doc. 17], "Countercomplaint"[1]).  Counterclaimant opposes the Motion ([Doc. 28], "Opposition").  Counter-Defendant has replied.  ([Doc. 33], "Reply".)

The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1).  For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I.    BACKGROUND

This lawsuit arises out of a business merger gone sour.  As alleged, Counterclaimant (a biotech company) acquired the San Diego based DNA nanotechnology start-up company Palamedrix, Inc. ("Palamedrix") in the summer of 2022.  (*Countercomplaint* at ¶¶ 1-2, 17.)  Palamedrix was founded by three individuals, Dr. Shane Bowen, Dr. Paul Rothemund, and Counter-Defendant (collectively, the "Founders").  (*Id*. at ¶ 2.)  According to Counterclaimant, it was "primarily interested in acquiring Palamedrix" not because of any property Palamedrix owned, but instead because it wanted to employ its three Founders and "other scientists."  (*Id*. at ¶ 3.)  As such, Counterclaimant executed a merger agreement (the "Merger Agreement"[2]) with Palamedrix on July 25, 2022, whereby Counterclaimant paid Palamedrix $14 million in cash ("Upfront Cash") and an additional $21 million worth of Counterclaimant's common stock ("Upfront Stock").  (*Id*. at ¶ 19.)  As alleged, this consideration was largely divided between Palamedrix's three Founders and for his part, Counter-Defendant's share of the Upfront Stock was 456,286 individual shares.  (*Id*. at ¶¶ 20, 33.)  Additionally, the Merger Agreement provided that an additional $17.5 million worth of "consideration" may be paid to the three Founders if certain "revenue-based milestones" were met by August of 2027 and August of 2028 *and* if the Founders remained employed "full-time" by Counterclaimant (the "Milestone Consideration").  (*Id*. at ¶ 20; *Merger*

[1] The Countercomplaint begins on page 13 of Doc. 17.
[2] The Merger Agreement is attached to the Countercomplaint as Exhibit A.

*Agreement* at Section 2.16(g)(i).)  The Merger Agreement closed on August 31, 2022 (the "Closing Date").

To entice Counter-Defendant to remain with Counterclaimant after the merger, it also entered into a side agreement (the "Founder Side Letter"[3]) on July 25, 2022 (the same date the Merger Agreement was executed)—which, in relevant part, provided that certain percentages of the Counter-Defendant's shares of the Upfront Stock Consideration would not vest unless he remained employed with Counterclaimant 12, 24, and 36 months after the Closing Date.  (*Id*. at ¶¶ 22-24, 30.)  Specifically, the Founder Side Letter provided that Counter-Defendant would have 76,062.88 shares of the Upfront Stock vest to him on the Closing Date, and would then have an additional 126,756.25 shares of the Upfront Stock vest to him if he remained employed by Counterclaimant every 12 months thereafter for the next three years (i.e. 126,756.25 would vest 12 months after the Closing Date, another 126,756.25 would vest 24 months after the Closing Date, and the final 126,756.25 would vest to him 36 months after the Closing Date).  (*Id*. at ¶¶ 33-34; *see Founder Side Letter* at Section 2(a)-(c).)  If Counter-Defendant was fired for "Cause" or resigned without "Good Reason" before these dates, the outstanding, unvested stock would not vest to him.  (*Countercomplaint* at ¶ 30).  "Cause" and "Good Reason" are both defined terms in the Merger Agreement, although not in the Founder Side Letters.  (*Id*. at ¶¶ 31-32.)  Similarly, the Counter-Defendant was only eligible to receive the Milestone Consideration if the requisite revenue milestones were met in 2027 and 2028 *and* he remained employed by Counterclaimant full-time—unless he was fired without "Cause" or resigned with "Good Reason."  (*Countercomplaint* at ¶ 37-38; *Merger Agreement* at Section 2.16(g)(i).)

According to Counterclaimant, the Founders remaining after the merger was so important that the Merger Agreement specifically identified the Founders signing their

---

[3] Counter-Defendant's Founder Side Letter is attached to the Countercomplaint as Exhibit B.

Founder Side Letters and accepting employment offers (the "Founder Offer Letter"[4])
with Counterclaimant as "material inducement" to Counterclaimant executing the Merger
Agreement and a "Condition to Closing."  (*Id*. at ¶ 22; *Merger Agreement* at 2.)  In turn,
the Founder Side Letters stated that "[e]ntering into this Side Letter will be a condition
precedent to" Counterclaimant "executing the [M]erger [A]greement."  (*Id*. at ¶ 22;
*Founder Side Letter* at Section 2.)

Unfortunately, the relationship between Counterclaimant and Counter-Defendant
soured shortly after the merger.  Indeed, on November 21, 2022, Counter-Defendant sent
Counterclaimant's attorneys a letter ("Demand Letter") asserting that he would be well
within his rights to resign for "Good Reason" given that certain former Palamedrix
employees had left Counterclaimant shortly after the merger.  (*Countercomplaint* at ¶ 77.)
Then, on March 14, 2023, Counterclaimant informed Counter-Defendant that he was in
violation of numerous company policies and was suspending his access to the company
systems and email.  (*Countercomplaint* at ¶ 81.)  On April 10, 2023, Counter-Defendant
informed Counterclaimant that he was resigning. (*Id*. at ¶ 84.)

Shortly thereafter, on April 28, 2023, Counter-Defendant initiated this case by
filing his complaint ("Complaint"[5]) against Counterclaimant in San Diego County
Superior Court, seeking: (1) declaratory judgment that Counter-Defendant resigned for
"Good Reason" under the Merger Agreement (thereby entitling him to the rest of his
Upfront Stock vesting and his potential share of the Milestone Consideration despite no
longer working for Counterclaimant); and (2) that alternatively, he was wrongfully
discharged (i.e. without "Cause") for "refusing to condone and reporting gender
discrimination and harassment" at Counterclaimant.  (*Complaint* at ¶¶ 80, 86.)

---

[4] Counter-Defendant's Founder Offer Letter is attached to the Countercomplaint as Exhibit C.  Like the
Merger Agreement and Founder Side Letter, the Founder Offer Letter was executed on July 25, 2022.
(Countercomplaint at ¶ 26.)
[5] The original state court Complaint is attached to the Notice of Removal [Doc. 1] as Exhibit 4.

Defendant/Counterclaimant removed the case to this Court on June 22, 2023, citing diversity jurisdiction.  (*See generally*, *Notice of Removal*.)

Counterclaimant then filed its Countercomplaint on September 5, 2023, asserting four causes of action: (1) "Fraud (Fraudulent Inducement, False Promise, Concealment, and Intention Misrelation"); (2) Negligent Misrepresentation; (3) Breach of the Implied Covenant of Good Faith and Fair Dealings; and (4) Declaratory Relief that Counter-Defendant resigned without "Good Reason" or, alternatively, that Counter-Defendant was terminated for "Cause."  (*Countercomplaint* at ¶¶ 129.)

Generally, with respect to the first two causes of action, Counterclaimant alleges that during the negotiation of the Merger Agreement, Founder Side Letters, and Founder-Offer Letters, Counter-Defendant made representations that: (i) he would remain as an employee with Counterclaimant for at least three years; (ii) that he would supervise employees in the San Diego office; (iii) that he would develop technology for Counterclaimant; and (iv) that he would work in good faith towards achieving the revenue goals that the Milestone Consideration was conditioned on.  (*Id*. at ¶¶ 98, 110.)  Of course, these four goals were largely not achieved in the sense that Counter-Defendant ceased to be an employee of Counterclaimant less than a year after the Closing Date, thus rendering the four above mentioned representations either—in Counterclaimant's view—fraudulent or negligent misrepresentations.  For this, Counterclaimant seeks, among other things, repayment of the Upfront Cash and Upfront Stock.  (*Id*. at ¶¶ 106, 117.)

Similarly, as to the third cause of action, Counterclaimant alleges that Counter-Defendant violated the covenant of good faith and fair dealings with respect to the Founder Side Letter and Founder Offer Letter by "shirking his assigned work," "poorly managing team members," working on outside projects, violating Counterclaimant's policies, talking badly about Counterclaimant to his fellow employees, asserting in the Demand Letter that he had the right to resign for "Good Reason," and generally by failing to perform his job duties.  (*Id*. at ¶¶ 119-22.)  For this, Counterclaimant seeks recovery of the salary paid to Counter-Defendant in the few months he was employed by

5

Counterclaimant, the cost of replacing Counter-Defendant, as well as the Upfront Cash and Upfront Stock. (*Id*. at ¶ 124.)

As to the fourth cause of action, Counterclaimant alleges that Counter-Defendant resigned without "Good Reason" or, alternatively, was terminated for "Cause." (*Id*. at ¶¶ 127-28.)

Counter-Defendant now moves to dismiss all four causes of action in the Countercomplaint, and Counterclaimant opposes.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Additionally, in evaluating the motion, the Court must assume the truth of all factual allegations and must "construe them in light most favorable to the nonmoving party." *Gompper v. VISX, Inc*., 298 F.3d 893, 895 (9th Cir. 2002).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable

inferences.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## III.   DISCUSSION

### A.   First and Second Causes of Action (Fraud and Negligent Misrepresentation)

Counter-Defendant moves to dismiss Counterclaimant's first and second causes of action (Fraud and Negligent Misrepresentation) on two separate grounds: (1) that they fail to allege "reasonable" reliance and (2) that they fail to meet Rule 9(b)'s heightened pleading requirement.  (*Motion* at 3-8.)  Both grounds are indeed fatal to Counterclaimant's first two causes of action.

#### 1.   "Reasonability" of the Reliance

As Counter-Defendant points out (*Id.* at 6) and Counterclaimant acknowledges (*Opposition* at 10), "reasonable reliance" is an essential element of both Fraud and Negligent Misrepresentation.  (*See* California Civil Jury Instructions ("CACI"), 1900-03.) While the "reasonableness" of reliance is ordinarily a question of fact, it can be decided "as a matter of law if reasonable minds can come only one conclusion based on the facts."  *City Sols., Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 841 (9th Cir. 2004) (*quoting Guido v. Koopman*, 1 Cal.App.4th 837, 843 (1991)).

Counterclaimant points to its allegations in paragraphs 99 and 110 of the Countercomplaint, where it has alleged that Counter-Defendant represented to Counterclaimant "during [the] negotiations [of the Merger Agreement, Founder Side Letter, and Founder Offer Letter]" that "[Counter-Defendant] would (i) work at [Counterclaimant] after the merger for a period of three years or longer; (ii) continue supervising employees in the San Diego office; (iii) continue developing technology for [Counterclaimant]; and (iv) work in good faith towards achieving the [Milestone Consideration] set out in the Merger Agreement."  (*Opposition* at 11.)  Indeed, Counterclaimant alleges that "it would not have entered into the Merger Agreement,

7

Founder Offer Letter, or Founder Side Letter with [Counter-Defendant]" nor would have paid him the Upfront Cash and Upfront Stock had they known he would be, in their view, such a poor employee who would no longer be with the company after less than a year of employment. (*Countercomplaint* at ¶¶ 104, 114.)

However, as Counter-Defendant correctly points out, the fatal flaw for Counterclaimant here is that Counter-Defendant's employment with Counterclaimant was explicitly at-will. (*Motion* at 6-8.) Indeed, the Founder Offer Letter clearly stated:

> Your employment with [Counterclaimant] is **at will**, meaning either you or [Counterclaimant] are **free to terminate the employment relationship at any time**. Nothing in this offer letter or any other [Counterclaimant] communication, document, policy, or procedure is intended to create a promise or representation of continued employment or employment for a fixed period of time."
> (*Founder Offer Letter* at 2 [emphasis added].)

And, as *Counterclaimant* alleges, the Founder Side Letter and Founder Offer Letter were executed "concurrently" with the Merger Agreement and were "material inducement" to Counterclaimant entering into the Merger Agreement. (*Countercomplaint* at ¶ 22.)

Counter-Defendant is correct that, under California law, it is simply not reasonable—as a matter of law—for a party to rely on representations that contradict the terms of a written agreement. *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 2013 WL 12113998, at *17 (C.D. Cal. Sept. 6, 2013) ("A number of other decisions have similarly held that there cannot be justifiable reliance where a plaintiff claims to have relied upon a promise or representation which is wholly inconsistent with an express term of the contract knowingly executed by the plaintiff."); *BASF Corp. v. Platinum Collision Centers, Inc.*, 2019 WL 6317776, at *6 (C.D. Cal. July 3, 2019) ("where alleged misrepresentations in a fraud in the inducement action contradict an integrated written agreement, as here, California courts routinely conclude that 'reliance is simply not justifiable.'").

Counter-Defendant cites several cases applying this principle to the employment context, all of which find "at-will" clauses in employment agreements—just like the "at-will" clause in the Founder Offer Letter—render any reliance by the other party on representations that employment will continue for some specific period to be "unreasonable." *Slivinsky v. Watkins-Johnson Co*., 221 Cal. App. 3d 799, 807 (1990) ("[employee's] alleged reliance on [employer's] oral promises of continuing employment is simply not justifiable because the representations contradict the parties' integrated employment agreement which provided that the employment was at will."); *Nisbet v. Am. Nat'l Red Cros*s, 795 F. App'x 505, 508 (9th Cir. 2019) ("Plaintiff cannot support her claim for intentional or negligent misrepresentation because an at-will employee cannot justifiably rely on oral promises of continued employment.").

Here, just like in *Slivinsky* and *Nisbet*, Counterclaimant's alleged reliance on Counter-Defendant's supposed representations that he would " (i) work at [Counterclaimant] after the merger for a period of three years or longer" (*Countercomplaint* at ¶¶ 104, 114)  is rendered completely unreasonable by the Founder Offer Letter's "at-will" employment clause.  Similarly, Counter-Defendant's supposed representations that he would "(ii) continue supervising employees in the San Diego office; (iii) continue developing technology for [Counterclaimant]; (iv) work in good faith towards achieving the [Milestone Consideration] set out in the Merger Agreement" (*id*.) were also unreasonable for Counterclaimant to rely on because of the "at-will" employment clause in the Founder Offer Letter, in that those representations were all necessarily downstream from Counter-Defendant continuing to remain an employee. That is, if Counter-Defendant were to cease working at Counterclaimant, he obviously could not continue to supervise employees for or continue developing technology for

9

Counterclaimant, nor could he continue to work towards helping Counterclaimant reach the Milestone Consideration's revenue goals.[6]

Instead of citing any contrary authority, Counterclaimant tries to distinguish these cases by pointing out that they all involved "claims by employees to long-term or continuing employment," not "complex merger transactions conditioned on ancillary agreements." (*Opposition* at 11.)  While Counterclaimant's observation is true, the Court fails to see how the logic of these cases does not extend to the present case, especially where Counterclaimant fails to cite any authority to the contrary.  Indeed, if it unreasonable for an at-will employee to rely on an employer's representations that employment would continue long-term; it seems equally unreasonable for an employer to rely on an at-will employee's representation that the employee would remain at the company long-term.

Counterclaimant also argues Counter-Defendant's contractual relationship with Counterclaimant centered "not only [on] the [Founder] Offer Letter, but also the [Founder] Side Letter and Merger Agreement, which together provided for a three-year vesting structure for the Upfront Stock [] and performance-based targets five and six years away for Milestone Consideration." (*Opposition* at 11.)  However, these long-term vesting structures do not support Counterclaimant's theory that Counter-Defendant committed Fraud and/or Negligent Misrepresentation by allegedly leaving the company before three years.  To the contrary, the entire structure of the Founder Side Letter and Merger Agreement (specifically the vesting timelines of the Upfront Stock and Milestone

---

[6] While the Countercomplaint is not entirely clear on this point, the Court understands the Counter-Defendant's alleged failure to "(ii) continue supervising employees in the San Diego office; (iii) continue developing technology for [Counterclaimant]; (iv) work in good faith towards achieving the [Milestone Consideration] set out in the Merger Agreement" to relate to his departure from Counterclaimant (and thus his inability to achieve these three goals since he was no longer at the company).  However, to the extent the first and second causes of action also relate to his allegedly poor performance while employed by Counterclaimant, Counterclaimant's redress in such circumstances would be seeking to fire Counter-Defendant for "Cause" under Section 2.16(g) of the Merger Agreement, not to sue Counter-Defendant for Fraud and Negligent Misrepresentation.

Consideration) show that Counterclaimant and Counter-Defendant *expressly contemplated* that Counter-Defendant could leave or be fired at any time and what would happen to the Upfront Stock and Milestone Consideration in those circumstances.  If Counterclaimant wanted to entice that Counter-Defendant remained an employee longer than he did it could have added stronger incentives for Counter-Defendant to remain—such as structuring the vesting timeline of the Upfront Stock differently, increasing the value of the Milestone Consideration, or bargained to remove the at-will employment clause altogether.  But simply put, as a matter of law, it would not be Fraud or Negligent Misrepresentation for Counter-Defendant to exercise his right under the Founder Offer Letter to "terminate the employment relationship at any time" and choose to forego the unvested Upfront Stock and Milestone Consideration per the terms of the Founder Side Letter and Merger Agreement.  Nor would it be reasonable for Counterclaimant to rely on Counter-Defendant's alleged representations that he would remain with the company for that least 3 years after the Closing Date where the written, executed documents at issue all either explicitly allowed for or clearly considered Counter-Defendant leaving the company at any time.  Counterclaimant did not own Counter-Defendant.  To the contrary, he was free to leave his job at any time, so long as he was willing to forego the remainder of his Upfront Stock vesting and the Milestone Consideration (unless of course he left for "Good Reason" as defined by the Merger Agreement).

Accordingly, Counterclaimant's first and second causes of action are **DISMISSED** because its alleged reliance on Counter-Defendant's representations was not reasonable—as a matter of law—given the at-will employment clause in the Founder Offer Letter and the long-term vesting structure of Upfront Stock and Milestone Consideration in the Merger Agreement and Founder Side Letter.

### 2.    Particularity Requirement

In addition to failing to properly allege "reasonable" reliance, Counterclaimant's first and second causes of action fail in part because they do not to meet the heightened pleading requirements of Rule 9(b).  (*See Motion* at 3-6.)  Specifically, Counter-

11

3:23-cv-01164-W-WVG

Defendant argues that the Countercomplaint fails to allege the necessary facts regarding the "who," "what," "where," and "when" of the supposed fraud and negligent misrepresentations.

Counter-Defendant is correct that Counterclaimant's first and second causes of action (for "Fraudulent Inducement, False Promise, Concealment, and Intentional Misrepresentation" and "Negligent Misrepresentation") must both "state with particularity the circumstances constituting fraud or mistake" as required by Rule 9(b). *Lantz Ret. Invs., LLC v. Glover*, 2023 WL 3533892, at *1 (9th Cir. May 18, 2023) ("Plaintiffs bring several fraud-based claims subject to Rule 9 of the Federal Rules of Civil Procedure: intentional misrepresentation; negligent misrepresentation . . . ."); *Puri v. Khalsa*, 674 F. App'x 679, 689 (9th Cir. 2017) ("The complaint's allegations concerning negligent misrepresentations are uniformly conclusory. They include only broad reference to allegations made in previous paragraphs, lacking particularized detail of any alleged misrepresentations."). Counterclaimant concedes this point, instead arguing that its first and second causes of action meet Rule 9(b)'s heightened pleading standard because their allegations are "specific enough to give defendants notice of the particular misconduct" at issue such that Counter-Defendant can "defend against the charge[s] . . . ." (*Opposition* at 8.)

Counterclaimant understates the requirements of Rule 9(b). "Under Rule 9(b), a plaintiff 'must state with particularity the circumstances constituting fraud. This means the plaintiff must allege '*the who, what, when, where, and how of the misconduct charged*,' including *what is false or misleading about a statement*, and *why it is false*. *Puri v. Khalsa*, 674 F. App'x 679, 687 (9th Cir. 2017) (emphasis added) (citations omitted). The reason for requiring such particularity is to "give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (ellipse omitted). To provide such required notice, "the complaint must specify such facts as the times, dates, places . . . and other details of the alleged

fraudulent activity." *Oh v. Hanmi Fin. Corp.*, 621 F. Supp. 3d 1075, 1082 (C.D. Cal. 2022) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993)).

However, these strict requirements apply only to Counterclaimant's allegations of affirmative misrepresentation.  (*See Opposition* at 9-10.)  To the extent the first and second causes of action also allege concealment or omissions, this "who, what, when, where, and how" requirement is replaced by the requirement that the Countercomplaint simply allege that: Counter-Defendant had a duty to disclose certain facts and Counterclaimant would have acted differently had they known those facts.  *Baggett v. Hewlett-Packard Co*., 582 F. Supp. 2d 1261, 1267-68 (C.D. Cal. 2007) (emphasis added) (citations omitted) ("[I]t is clear that a plaintiff in a fraudulent concealment suit will 'not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim.'  Because such a plaintiff is alleging a failure to act instead of an affirmative act, the plaintiff cannot point out the specific moment when the defendant failed to act.  So, a fraud by omission or fraud by concealment claim 'can succeed without the same level of specificity required by a normal fraud claim.' . . . . [Plaintiff has satisfied its pleading requirement by] *alleging that 'Plaintiff and the Class were unaware of the above facts and would not have acted as they did if they had known.'*");  *Falk v. Gen. Motors Corp*., 496 F. Supp. 2d 1088, 1098–99 (N.D. Cal. 2007) ("Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim. . . . [A] fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim. . . . Plaintiffs adequately state a claim of fraud by omission. They allege that GM was bound by a duty to disclose material facts about its speedometers from 2003 to 2007. GM failed to disclose this information, and plaintiffs reasonably claim that they suffered damages after justifiably relying on GM's failure to disclose any defects with the speedometers.").

*a)*   ***Affirmative Misrepresentations***

At the heart of its affirmative misrepresentation theory, Counterclaimant's first cause of action alleges:

> In the period before completion of the Merger, [Counter-Defendant] and other Palamedrix representatives acting on [Counter-Defendant's] behalf made representations during negotiations with [Counterclaimant] that he would: (i) work at [Counterclaimant] after the Merger for a period of three years or longer; (ii) continue supervising employees in the San Diego office; (iii) continue developing technology for [Counterclaimant]; and (iv) work in good faith towards achieving the Milestones set out in the Merger Agreement.
> (*Countercomplaint* at ¶ 99.)

Similarly, Counterclaimant's second cause of action alleges (with respect to its affirmative misrepresentation theory):

> At or around that time and for months before between August 2021 and August 2022, [Counter-Defendant] and other Palamedrix representatives acting on [Counter-Defendant's] behalf made representations during negotiations with [Counterclaimant] (a transaction that [Counter-Defendant] had a financial interest in) that [Counter-Defendant] would: (i) work at [Counterclaimant] after the Merger for a period of at least three years or longer; (ii) supervise employees in the San Diego office; (iii) develop technology for [Counterclaimant]; and (iv) work in good faith towards achieving the Milestones set out in the Merger Agreement.
> (*Countercomplaint* at ¶ 110.)

Counter-Defendant argues that the first and second causes of action fail because the Countercomplaint fails to allege facts regarding the "who," "what," "when," and "where." (*Motion* at 3-6.)

*Who*: Counterclaimant alleges for both its first and second causes of action that "[Counter-Defendant] and other Palamedrix representatives" made the misrepresentations. (*Countercomplaint* at ¶¶ 99, 110.) Because the Countercomplaint specifically identifies Counter-Defendant by name, it sufficiently alleges the "who" with respect to Counter-Defendant. However, because the "other Palamedrix representatives"

14

remain unnamed, the first and second causes of action fail to meet the "who" requirement with respect to anyone other than Counter-Defendant.

*What*:  For both the first and second causes of action, Counterclaimant alleges that Counter-Defendant "made representations during negotiations with [Counterclaimant]" that Counter-Defendant "would: (i) work at [Counterclaimant] after the Merger for a period of at least three years or longer; (ii) supervise employees in the San Diego office; (iii) develop technology for [Counterclaimant]; and (iv) work in good faith towards achieving the Milestones set out in the Merger Agreement."  (*Countercomplaint* at ¶¶ 99, 110.)  And of course, Counter-Defendant was no longer employed with Counterclaimant less than a year after the Closing Date.  (*Countercomplaint* at ¶¶ 81, 84.)  Accordingly, Counterclaimant has sufficiently alleged "what" the misrepresentations complained of are.

*When*:  For its first cause of action, Counterclaimant alleges that the supposed misrepresentations were made simply "[i]n the period before the completion of the Merger . . . ."  (*Countercomplaint* at ¶ 99.)  Similarly, for its second cause of action, Counterclaimant alleges that the supposed misrepresentations were made "[a]t or around [the Closing Date] and for months before between August 2021 and August 2022 . . . ."  (*Countercomplaint* at ¶ 110.)  These generalized temporal allegations lack sufficient specificity to meet the "when" requirement of Rule 9(b) because they fail to provide Counter-Defendant sufficient notice of the exact statements, conversations, and/or communications complained of.  *See Vess*, 317 F.3d at 1106; *Hanmi Fin. Corp*., 621 F. Supp. 3d at 1082.

*Where*:  Both the first and second causes of actions fail to meet the "where" requirement in that the Countercomplaint does not even attempt to allege where the supposed misrepresentations occurred.  (*See Motion* at 5.)  Nor does the Countercomplaint allege, at any point, the mode of communication whereby the supposed misrepresentations were made.  *See, e.g.*, *Kapu Gems v. Diamond Imports, Inc*., 2016 WL 4259119, at *14 (N.D. Cal. Aug. 12, 2016) (holding fraud claims must be dismissed

where plaintiff failed to allege whether the misrepresentations "made in person or by some other mode of communication.").

Accordingly, the Countercomplaint's first and second causes of action fail to the extent that they allege affirmative misrepresentation.

### b) *__Omissions/Concealments__*

As Counterclaimant points out in its Opposition, the Countercomplaint alleges that Counter-Defendant made not only affirmative misrepresentations with respect to the first and second causes of action, but also that Counter-Defendant omitted/concealed facts. (Countercomplaint at ¶¶ 102-03 ["[Counter-Defendant] also fraudulently concealed and failed to disclose several material facts which he had a duty to disclose.  There was a duty to disclose, because [Counter-Defendant] made the affirmative representations specified in paragraph 98 above, which were incomplete and misleading given that [Counter-Defendant] was aware that he did not intend to continue in his employment at [Counterclaimant] for any significant period of time . . . . [Counter-Defendant] failed to disclose that he (i) intended to leave [Counterclaimant] within a very short period while asserting an entitlement to all consideration under the Merger Agreement and Founder Side Letter, and (ii) had no intention of continuing to supervise employees in the San Diego office, develop technology for [Counterclaimant], or work in good faith towards achieving the [Milestone Consideration] set out in the Merger Agreement."]; 115 ["in reasonable and justifiable reliance upon the representations and related omissions made by Dr. Gopinath, [Counterclaimant] executed and performed under the Merger Agreement, Founder Offer Letter, and Founder Side Letter and proceed to pay or agree to pay consideration to [Counter-Defendant] under those agreements."].)

Counter-Defendant objects that these allegations do not set forth the "who," "what," "when," and "where" of the omissions and/or concealments.  However, as explained above, Counterclaimant need only allege that Counter-Defendant owed a duty to disclose certain information to Counterclaimant and that Counterclaimant would have acted differently had Counter-Defendant disclosed said information.  Because Counter-

16

Defendant raises no arguments regarding whether he had a duty to disclose certain information or the sufficiency of Counterclaimant's allegations of said duty, the Court notes only that the Countercomplaint does allege, at least facially, that Counter-Defendant owed a duty to disclose certain information and that Counterclaimant would have acted differently had it know that information.  (*See Countercomplaint* at ¶¶ 102-04; 115.)

Accordingly, the Countercomplaint's first and second causes of action do not fail with respect to their allegations of omissions/concealments on account of failing to allege "who," "what," "when," and "where."  However, as explained above, the first and second causes of action still fail with respect to both the alleged affirmative misrepresentations and omissions/concealments because Counterclaimant has failed to allege reasonable reliance.

### B.   Third Cause of Action (Breach of the Implied Covenant of Good Faith and Fair Dealings)

Counter-Defendant moves to dismiss Counterclaimant's third cause of action (breach of the implied covenant of good faith and fair dealings with respect to the Founder Side Letter and the Founder Offer Letter) on the grounds that it attempts to impose terms on Counter-Defendant beyond those contained in the Founder Side Letter and Founder Offer Letter.  (*See Motion* at 11-16.)

At the outset, it is important to note that the implied covenant of good faith and fair dealings imposes only the obligation for neither party to a contract to "do anything that will injure there right of the other party to receive the benefits of the agreement." *Openshaw v. FedEx Ground Package Sys., Inc*., 576 F. App'x 685, 687 (9th Cir. 2014). However, it "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement."  *Id*. (quoting *Guz v. Bechtel Nat. Inc*., 24 Cal. 4th 317 (2000)).  And it certainly "cannot contradict the express terms of a contract."  *Bevis v. Terrace View Partners, LP*, 33 Cal. App. 5th 230, 252 (2019).

17

As the California Supreme Court has noted, "[w]e are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement."  *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal.App.4th 44, 55 (2002).

For the reasons stated below, the Countercomplaint's third cause of action indeed fails to adequately allege a breach of the implied covenant of good faith and fair dealings.

### 1.   **The Founder Offer Letter**

The Countercomplaint alleges that Counter-Defendant breached the implied covenant with respect to the Founder Offer Letter by:

> [F]ailing to perform his duties and shirking his assigned work over the course of months, denigrating [Counterclaimant] to others (including his own team), poorly managing team members, consistently prioritizing his outside projects over his commitments to [Counterclaimant], violating multiple Company policies, and lying to [Counterclaimant]. (*Countercomplaint* at ¶ 122.)

For this, Counterclaimant seeks damages in the amount of: (1) the value of the salary and benefits it paid Counter-Defendant while he was employed with it; (2) the value of the Upfront Cash and the Upfront Stock; (3) "the cost of replacing [Counter-Defendant]"; and (4) "other harm resulting from [Counter-Defendant's] misconduct." (*Countercomplaint* at ¶ 124.)

The problem for Counterclaimant once again is that the Founder Offer Letter was explicitly at-will and stated that either party was "free to terminate the employment relationship at any time."  (*Founder Offer Letter* at 2.)  And, under the Merger Agreement and Founder Side Letter, Counterclaimant could only fire Counter-Defendant without triggering the vesting of any unvested Upfront Stock or the Milestone Consideration if the firing was for "Cause."  (*Countercomplaint* at ¶¶ 30, 37-38.)  Taken together, Counterclaimant was free to fire Counter-Defendant at any time.  However, if it wanted to avoid vesting any unvested Upfront Stock or the Milestone consideration to Counter-Defendant, Counterclaimant could only fire him for "Cause."

18

1    The Court will not impose substantive duties on Counter-Defendant regarding his

2    employment obligations beyond what was in written agreements at issue.  Between the

3    Offer Letter's at-will employment clause and the long-term vesting structure of the

4    Upfront Stock and Milestone Consideration, the parties clearly contemplated what

5    Counter-Defendant's employment obligations were and what the penalties would be if he

6    failed to meet those obligations.  To wit, if Counterclaimant was unhappy with Counter-

7    Defendant's job performance, its remedy was to try to fire him for "Cause" and prevent

8    the vesting of any unvested Upfront Stock or the Milestone Consideration.  That is what

9    the parties explicitly bargained for.  The Court will not use the covenant of good faith and

10   fair dealings to go beyond the terms of the written agreements and modify the

11   circumstances in which Counterclaimant can claw-back the Upfront Stock and Milestone

12   Consideration from Counter-Defendant (or otherwise punish him).  Doing so would

13   effectively be modifying the definition of "Cause" and expanding the penalty to Counter-

14   Defendant to include clawing back the Upfront Cash.

15   Counterclaimant cites two cases that it claims support the theory that the covenant

16   of good faith and fair dealings can be used by employers against employees for violating

17   company policies: *Cumis Ins. Soc'y, Inc. v. Vallatini*, 2018 WL 3430672, at *2-4 (D.

18   Haw. July 16, 2018); *Carpenter v. All Am. Games*, 2017 WL 394517, at *3-4 (D. Ariz.

19   Jan. 30, 2017).  Both cases are distinguishable.  First, both are unpublished cases from

20   different judicial districts applying Hawaii and Arizona state law, respectively.

21   Unsurprisingly, neither case discusses the California law principle that the implied

22   covenant of good faith and fair dealings cannot be used to impose substantive duties on

23   the contracting parties beyond those incorporated in the specific terms of the agreement.

24   Second, both cases involved allegations that the employee had engaged is serious fraud

25   and self-dealing far beyond what is alleged in the Countercomplaint.  *See Vallatini*, 2018

26   WL 3430672, at *1 ("[a]ccording to [employer's subrogee], in approving loans to certain

27   borrowers in violation of [employer's] policies, [Defendant] 'knowingly and intentionally

28   misrepresented that various members were qualified borrowers when in fact, they were

not.'"); *All Am. Games*, 2017 WL 394517, at *1 (internal citations omitted) ("[counterclaimants] discovered a 'troubling and improper relationship between [counter-defendant] and another former employee.'  According to [counterclaimants], this former employee was manipulating '[counterclaimants'] financial systems to inflate the revenue numbers for the FBU regional camps being held in Phoenix, Seattle and California' . . . . [counterclaimants'] investigation revealed that '[counter-defendant] extended reduced pricing to customers that were unauthorized by [counterclaimants] in order to inflate the revenue numbers for those camps' . . . .").

Additionally, the third cause of action fails because at no point does the Countercomplaint identify what specific contractual provision Counter-Defendant's actions frustrated.  *E.g.*, *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012) (quoting *Perez v. Wells Fargo Bank, N.A.*, 2011 WL 3809808, at *18 (N.D. Cal. Aug. 29, 2011)) ("to state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated."); *Upstrem, Inc. v. BHFO, Inc.*, 2021 WL 2038324, at *8 (S.D. Cal. May 21, 2021) (same).

Absent any contrary, binding authority applying California law, the Court will not use the implied covenant of good faith and fair dealings to effectively modify the specifically bargained for circumstances in which Counter-Defendant could be fired for "Cause" and what the penalties would be for Counter-Defendant.

## 2.    The Founder Side Letter

The Countercomplaint also alleges that Counter-Defendant breached the implied covenant of good faith and fair dealings with respect to the Founder Side Letter for largely the same reasons as the Founder Offer Letter.  (*See Countercomplaint* at ¶ 122.) However, with respect to the Founder Side Letter, the third cause of action adds the allegation that "[Counter-Defendant] prevented [Counterclaimant] from receiving the

3:23-cv-01164-W-WVG

benefits under the Founder Side Letter by asserting an entitlement to resign with full compensation within three months of the Closing Date." (*Id*.)

Unlike the Founder Offer Letter, the Founder Side Letter contains a choice of law clause stating that it is "governed by the laws of the State of Delaware." (*Founder Side Letter* at 3.) A federal court sitting in diversity must apply the choice of law method of the forum state. *E.g., Zinser v. Accufix Rsch. Inst., Inc*., 253 F.3d 1180, 1187 (9th Cir.). Under California's choice of law method, courts must apply the law of the state that the parties chose in their choice of law clause, so long as (1) the "chosen state has a substantial relationship to the parties or their transaction" or (2) "there is any other reasonable basis for the parties' choice of law." W*ashington Mut. Bank, FA v. Superior Ct*., 24 Cal. 4th 906, 916 (2001); *accord* Restatement (Second) of Conflict of Laws § 187 (1971); Restatement (Third) of Conflict of Laws, § 6.10, A TD No 4 (2023). Given the choice of law clause and Counterclaimant's incorporation in the state of Delaware ([Doc. 17], "Answer" at ¶ 15), the Court will apply Delaware law.

The protections provided under Delaware's implied covenant of good faith and fair dealings are less robust than California's. Under Delaware law, the implied covenant can only be used to fill gaps in a contract and "imply[] only those terms that the parties would have agreed to during their original negotiations if they had thought to address them." *Cygnus Opportunity Fund, LLC v. Washington Prime Grp., LLC*, 302 A.3d 430, 459 (Del. Ch. 2023). Thus, the implied covenant "cannot be invoked where the contract itself expressly covers the subject at issue." *Id*. at 458.

Here, the Founder Side Letter explicitly laid out the long-term vesting structure of the Upfront Stock and stated "if [Counter-Defendant's] employment with [Counterclaimant] is terminated without Cause or if you resign for Good Reason . . . then one hundred percent (100%) of your Upfront Stock Consideration will no longer be subject to forfeiture." (*Founder Side Letter* at Section 2.) Of course, the flip side of this was that the unvested Upfront Stock would not vest to Counter-Defendant if he were fired for "Cause" or resigned without "Good Reason." From this, it is clear the parties

3:23-cv-01164-W-WVG

*did* contemplate what they wanted Counter-Defendant's employment obligations to be and what the penalties to Counter-Defendant could be if he violated those obligations. If Counterclaimant was unhappy with Counter-Defendant's job performance or his assertion in the Demand Letter that he was within his rights to resign for "Good Reason," it could have tried firing him for "Cause." Those attempts may or may not have failed, given the definitions of "Cause" and "Good Reason," but that is what the parties bargained for.

Accordingly, Counterclaimant's third cause of action fails to state a claim for breach of the implied covenant of good faith and dealings with respect to the Founder Side Letter because the parties already contractually agreed upon the exact circumstances under which Counter-Defendant could be fired for "Cause" and what the penalties would be. The implied covenant cannot be used to modify that.

Accordingly, the Countercomplaint's third cause of action is **DISMISSED**.


## C.     The Fourth Cause of Action (Declaratory Judgment That Counter-Defendant Resigned Without Good Reason, or Alternatively, Was Terminated for Cause)

Counterclaimant's fourth cause of action seeks declaratory judgment that Counter-Defendant resigned without "Good Reason" or, alternatively, that he was fired for "Cause." (*Countercomplaint* at ¶¶ 127-28.) Counter-Defendant moves to dismiss this cause of action, arguing that the Countercomplaint (1) "alleges no facts to support [Counterclaimant's] claim that [Counter-Defendant] lacked 'Good Reason' to resign," and (2) cannot proceed under the alternative theory that Counter-Defendant was terminated for "Cause" because Counterclaimant "judicially admits" that Counter-Defendant resigned. (*Motion* at 17-18.) Both arguments fail.

For starters, parties are free to plead their case in the alternative and doing so "should not be construed as an admission against another alternative or inconsistent pleading in the same case." *Anderson v. Edward D. Jones & Co., L.P.*, 990 F.3d 692 (9th

Cir. 2021), cert. denied, 142 S. Ct. 745 (2022) (citing *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985)) ("In light of the liberal pleading policy embodied in Rule 8[(d)](2), we hold that a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case. . . .").  On the one hand, Counterclaimant does state in its Answer to Counter-Defendant/Plaintiff's Complaint that "[Counterclaimant] admits that Plaintiff resigned from his employment at [Counterclaimant] and that in this action, he purports to have resigned for 'Good Reason.'" (*Answer* at ¶ 10.)  However, Counterclaimant goes on in that same paragraph to say "[Counterclaimant] also admits that [Counterclaimant] notified Plaintiff he was terminated for 'Cause.'" (*Id.*)

It is obvious from these statements in its Answer, along with the allegations in the Countercomplaint, that Counterclaimant is pleading the two theories in the alternative. Counterclaimant would prefer the Court to find that Counter-Defendant resigned without "Good Reason." (*Countercomplaint* at ¶¶ 127-28.)  However, if the Court finds that Counter-Defendant was terminated, Counterclaimant asks the court to alternatively find that it had "Cause" to terminate Counter-Defendant.  (*Id.*)  Accordingly, the Court will not hold that Counterclaimant pleading one theory somehow amounts to a judicial admission foreclosing an alternative theory.

Turning to the substance of the Counterclaimant's allegations in the fourth cause of action, the Court notes that the Merger Agreement defines "Good Reason" to include, among other things:  "a material, adverse change in [Counter-Defendant's] title, authority, duties or responsibilities . . . ." (*Merger Agreement* at Section 2.16(g)(iii)(C)(4).)  From here, Counter-Defendant argues that the fourth cause of action fails because the Countercomplaint does not specifically allege Counter-Defendant's "title, authority, duties [and] responsibilities" were not materially altered or adversely changed before he resigned—i.e., the Countercomplaint does not allege facts showing he lacked "Good Reason" to resign.  (*Opposition* at 17-18.)

3:23-cv-01164-W-WVG

However, the Countercomplaint does allege that in November 2022, Counter-Defendant's attorneys sent Counterclaimant the Demand Letter wherein Counter-Defendant asserted he had resigned for "Good Reason." (*Counative-complaint* at ¶ 76; *see* ) The Countercomplaint goes on to allege that this claim of "Good Reason" was "false[]." (*Id.* at ¶ 77.) Furthermore, attached to the Countercomplaint is a letter Counterclaimant's attorneys sent in response to the Demand Letter, wherein Counterclaimant's attorney laid out in detail why Counter-Defendant did not have "Good Reason" to resigned. ("Response Letter"[7] at 1, 4 ["[T]he Good Reason identified in [the Demand Letter] was essentially that certain former Palamedrix employees had left [Counterclaimant] (as would be expected in any company transaction). On December 14, I responded to inform you that your letter was wrong on the facts and the law. As I explained, certain of those employees that left [Counterclaimant] and were the subject of [the Demand Letter] in fact claimed that [Counter-Defendant] was part of the reason they were leaving. And I explained that, as [Counter-Defendant] was aware, [Counterclaimant] was actively looking for additional employees . . . . [Counterclaimant] worked with [the Founders] to advertise for, and hire, qualified replacements for those employees. [Counter-Defendant] expressly only asked for replacements for three employees, and never requested backfill for the other roles. Replacements for all three advertised roles were hired as soon as qualified candidates were found."].)

While perhaps not a model of pleading, the Court takes paragraphs 76 and 77 of the Countercomplaint, together with the Merger Agreement's definition of "Good Reason" and the Response Letter, to sufficiently alleged facts that, if true, would state a plausible claim for declaratory judgment that Counter-Defendant resigned without "Good Reason"—in that he resigned when there was no material, adverse change to his "title, authority, duties or responsibilities." *See Durning v. First Bos. Corp.*, 815 F.2d 1265,

---

[7] The Response Letter is attached to the Complaint as Exhibit K.

1267 (9th Cir. 1987) ("If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim.").

Accordingly, Motion is **DENIED** with respect to the fourth cause of action.

### D.   Leave to Amend

Lastly, Counterclaimant asks the Court to grant it leave to amend its Countercomplaint if the Court dismisses any of its four causes of action.  (*Opposition* at 25.)  As explained above, the Court is indeed dismissing the Countercomplaint's first, second, and third causes of action.

Federal Rule of Civil Procedure 15(a)(2) states that courts "should freely give leave [to amend] when justice so requires."  Furthermore, Ninth Circuit precedent is clear that leave to amend "should be grated with 'extreme liberty'" and only be denied when "it is clear . . . that the complaint could not be saved by any amendment."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009).

Counter-Defendant argues that leave to amend should not be granted as to the first and second causes of action, because "amendment would be futile"—in that Counterclaimant's entire theory of "reliance" is completely unreasonable as a matter of law since Counterclaimant alleges to have relied on representations contrary to the written agreements.  (*Motion* at 9-10.)  Counterclaimant responds by emphasizing how leave to amend should be granted with "extreme liberty."  (*Opposition* at 13; 25.)  Counterclaimant does not however, assert any additional facts that it would plead if given the opportunity.  (*See id.*)

Here, allowing Counterclaimant to amend its first and second causes of action would be futile because the entire legal theory upon which they rest—that Counterclaimant could reasonably rely on any representations contrary to the written

25

agreements—fail as a matter of law.  There are no additional facts Counterclaimant could plead that would change this.

As for the third cause of action, Counter-Defendant does not ask the Court to dismiss without leave to amend.  However, the Court also believes the legal theory upon which the third cause of action rests—that the implied covenant can be used to impose additional employment obligations on Counter-Defendant and penalties for violations thereof beyond those clearly contemplated by the agreements at issue—fails as a matter of law.  Yet, given the liberal amendment policies in federal court and Counter-Defendant's failure to ask for the third cause of action to be dismissed without leave to amend, the Court will hesitantly allow Counterclaimant to amend its third cause of action.  However, the Court remains highly skeptical that Counterclaimant will be able successfully amend its third cause of action.  Any amendment must comply with this Order.

## IV.   CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion [Doc. 19].  The Countercomplaint's [Doc. 17] first and second causes of action are **DISMISSED WITHOUT LEAVE TO AMEND**; the third cause of action is **DISMISSED WITH LEAVE TO AMEND**; and the fourth cause of action remains.

Dated:  November 22, 2023

Hon. Thomas J. Whelan
United States District Judge

26